372 So.2d 1060 (1979)
Fannie GODWIN et al.
v.
EAST BATON ROUGE PARISH SCHOOL BOARD et al.
No. 12451.
Court of Appeal of Louisiana, First Circuit.
March 5, 1979.
Rehearing Denied May 1, 1979.
Writ Refused June 15, 1979.
*1061 Woodrow W. Wyatt, Baton Rouge, of counsel, for plaintiffs-appellants Fannie Godwin, et al.
John F. Ward, Jr., Baton Rouge, of counsel, for defendants-appellees East Baton Rouge Parish School Board, et al.
Before LANDRY, COVINGTON and PONDER, JJ.
*1062 LANDRY, Judge.
Plaintiffs (Appellants), citizens-taxpayers of East Baton Rouge Parish, instituted this action against the East Baton Rouge Parish School Board (School Board), the School Board's members individually and certain School Board staff and supervisory personnel, for a declaratory judgment decreeing defendants in violation of La.Const.1974, Article XI, Section 4 (which prohibits use of public funds to urge support of or opposition to any political candidate or proposition) and for a judgment ordering reimbursement to the public fisc of such funds found to have been thus illegally expended. The trial court sustained an exception of no cause of action by all individual defendants, from which judgment Appellants have appealed. We reverse and remand this matter to the trial court for further proceedings.
An exception of no cause of action, also based on a plea of governmental immunity, was filed on behalf of defendant School Board as an agency of the state. The trial court sustained this exception and plaintiffs applied to the Supreme Court for supervisory writs. Upon granting writs, the Supreme Court reversed the judgment sustaining the School Board's exception of no cause of action and remanded for trial as against the School Board. See Godwin v. East Baton Rouge Parish School Board, 342 So.2d 867 (La.1977).
La.Const.1974, Article XI, Section 4, provides:
"Section 4. No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot."
Appellants allege that on January 27, 1977, the School Board, as governing authority, School District Number 1, East Baton Rouge Parish, called an election to be held March 8, 1977, for the purpose of submitting to the electorate two separate tax proposals for school purposes. Assertedly, the School Board Superintendent, the School Board, individual members of the School Board, members of the Superintendent's staff and certain employees, entered into a concerted plan of action to promote, encourage and achieve passage of the proposals submitted. In achieving such alleged illegal activity, defendants are charged with improperly using public funds, using public facilities such as printing equipment, computers and telephones, and employing the time of employees on duty. Defendants are expressly charged with issuing brochures, utilizing billboards, conducting a public opinion poll, employing the services of approximately 60 School Board employees to assist in taking the public opinion poll, requiring teachers to attend promotional sessions concerning the proposed taxes, and engaging School Board staff members during working hours to urge other employees and electors to support the proposals. These and other alleged illegal activities are asserted to have been engaged in by defendants without due care and reasonable diligence and with knowledge of and reckless disregard for the constitutional prohibition against expending public funds in the promotion of elections.
LSA-CCP Article 927(4) provides for the peremptory exception of no cause of action. The purpose of such an exception is to test whether plaintiff's allegations entitle him to any remedy whatsoever at law. For purposes of deciding such an exception, all well pleaded allegations of the petition, as well as those appearing from annexed documents, must be taken as true. Elliott v. Dupuy, 242 La. 173, 135 So.2d 54 (La. 1961). Any doubt as to the sufficiency of the petition must be resolved in favor of plaintiff. Geiger v. State, Department of Institutions, 242 So.2d 606 (La.App. 1st Cir. 1970).
Historically and traditionally our jurisprudence has held that there is no personal liability on the individual members of a public body or agency, who are public officials or officers, when they act in good faith and without malice, as the official action of *1063 the members becomes merged in the official body as an entity. Strahan v. Fussell, 218 La. 682, 50 So.2d 805 (1951); Tucker v. Edwards, 214 La. 560, 38 So.2d 241 (1948); Monnier v. Godbold, 116 La. 165, 40 So. 604 (1906). The apparent rationale of this line of jurisprudence is that members of state agencies are immune when acting in their official capacities in good faith and without malice, because in such instances their actions merge with that of the represented agency which itself is immune and that, for public policy reasons, members of public bodies should not be held liable in the absence of malice or bad faith. Monnier v. Godbold, supra.
Strahan v. Fussell, supra, involved a suit against a police juror, individually, for allegedly illegal activity in negligently spending funds improperly allocated to him by the police jury of which he was a member. The official was held amenable to suit on the ground that he acted illegally, outside the scope of his authority, thus usurping the authority of the agency represented. Under such circumstances, he was held to be without immunity as a public official.
In LaFleur v. Roberts, 157 So.2d 340 (La. App. 3rd Cir. 1963), a mayor appealed from judgment mandating the dismissal of an illegally appointed Director of Public Works. The question was whether the appointee possessed certain qualifications required by municipal charter. The court found the appointee lacking in qualifications. In sustaining the injunction to dismiss the employee, the court noted that a mayor must be accorded wide discretion in administering the affairs of a municipality and that the proper exercise thereof will be presumed in the absence of a showing to the contrary. It was also noted that courts cannot and should not interfere with the exercise of such discretion absent a clear showing of illegality or abuse thereof. Another issue in LaFleur was whether the mayor could be required to reimburse the City the full sum paid as salary to the invalidly appointed Director of Public Works. The court held the mayor could not be so required because there was no showing that either the municipality suffered any pecuniary damage or that the mayor was in bad faith. In effect, LaFleur, supra, held that where a public official acts contrary to express statutory provision, such action is illegal and personal liability may result if the official is found to be in bad faith.
Defendants, School Board members and supervisory personnel, maintain there can be no personal liability on their part because La.Const.1974, Article XI, Section 4 is not self-operative and requires legislative implementation. Alternatively, they contend they cannot be held guilty of wrongdoing because the constitutional provision is vague and uncertain such that it is impossible to determine with accuracy the type of conduct proscribed.
We find no merit in the argument that the provision is not self-operative. It was obviously intended to protect the public fisc by prohibiting expenditure of public funds for expressly proscribed purposes, namely, to promote or oppose any candidate for office, to promote or oppose the cause of any political organization, or to promote or oppose passage of any proposition submitted to the electorate. Additionally, the provision is designed to prevent public officials from using public funds to support or oppose candidates, parties or propositions. We note particularly that the provision does not prohibit public officials from supporting or opposing candidates, parties or propositions with their personal funds and resources, which admittedly they have a right to do. It only prevents their doing so with public funds.
Nor do we find substance in Appellees' contention that the constitutional article requires legislative implementation because it is vague and uncertain in that it is not clear what is prohibited by the clause "urge any elector to vote for or against any candidate or proposition," or what is permitted expenditure for "the dissemination of factual information relative to a proposition appearing on an election ballot." We find "urge" to be readily understood by an ordinarily informed and reasonable individual. *1064 According to Webster's Third New International Dictionary, Unabridged (1963), "urge" means "... to insist
uponto advocate or demand with importunityto prosecute vigorouslysolicitbe a compelling .... influence upon....."..." We believe the average individual understands "urge" to mean promote, take a position favorable or opposed to a particular candidate or proposition, or openly and publicly seek the election or defeat of a particular candidate, or the passage or defeat of a proposition submitted to the electorate.
In our view, the authority to disseminate factual information relative to a proposition appearing on an election ballot encompasses all empirical data required by the public to intelligently decide whether to vote for or against the issue. Included in such information would of course be tax rates, if any, interest rates on bonds or other evidence of indebtedness purported to be issued and the term and provisions thereof, and an explanation of the expenditures contemplated. Such information may be disseminated in brochures or otherwise, provided they are purely factual and suggest no position for or against and make it clear that the data is published and disseminated solely and only for informational purposes.
We find that defendants herein possess no sovereign immunity for the basic reason that the state, its agencies and subdivisions no longer enjoy such immunity. We deem the pivotal issue to be, therefore, not one of immunity but rather what duty of care is owed by public officials in the exercise of their official duties. In this regard, we deem our historical and traditional concepts of liability, as set forth in the hereinabove cited authorities, set reasonable and practical standards which afford ample protection to public officials performing their duties in good faith and without malice. We can readily understand the need for such protection in order to attract qualified persons to public office and thus promote efficient and orderly performance of governmental activities and public services. For these imperative reasons, we apply these established principles to determine whether Appellants' petition states a cause of action herein.
Appellants' petition alleges acts on the part of defendants which, if true, are in violation of the express prohibitory terms of a constitutional provision. It is also alleged that these violations were engaged in by defendants without due care and reasonable diligence and with reckless disregard for the constitutional provision they contravened. In our judgment such conduct, if established, must be deemed in bad faith and with malice. If conduct on the part of the mayor in appointing a municipal employee contrary to a municipal ordinance is actionable if done with malice or in bad faith, LaFleur v. Roberts, supra, we have no hesitancy in holding that a knowing violation of an express constitutional provision also subjects a public official to vulnerability to legal action if done with malice or in bad faith.
The judgment sustaining the exception of no cause of action filed herein on behalf of the individual defendants A. Bridger Eglin, Eileen Armstrong, J. O. Claudel, Randall Goodwin, L. L. Hines, Donald D. Hunt, Martial J. LaFleur, Jr., T. H. Montgomery, B. H. Peabody, George H. Richard, Pat Screen, W. W. Wells, Clyde Lindsey, Pat McCoy, Arthur Lamb, Graydon Walker and Richard Faether, is hereby reversed and set aside and judgment rendered herein in favor of plaintiffs overruling said exception of no cause of action and remanding this matter to the trial court for further proceedings consistent with the views herein expressed, costs of this present appeal to be paid by defendants-exceptors.
Reversed and remanded.