Dear Mr. Carson:
You have requested an opinion of the Attorney General regarding the issue of whether public funds can be expended to conduct an informational poll of voters to determine public views and comments on tax proposals and governmental services.
The constitution prohibits the use of public funds to promote or defeat any candidate or proposition. Article XI, Section 4 provides:
 "Section 4. No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot."
Similar language is found in our Election Code in LSA-R.S. 18:1465:
 "A. No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot.
 B. Whoever violates any provision of this Section shall be fined not more than five hundred dollars or be imprisoned for not more than six months, or both. On a second offense or any succeeding offense, the penalty shall be a fine of not more than one thousand dollars or imprisonment for not more than one year, or both."
Finally, there is a further restriction against advertisements being paid for with public funds contained in LSA-R.S. 43:111.1:
 "No public funds shall be used in whole or part for the payment of the cost of any advertisement containing therein the name of any public official whether elected or appointed; provided, however, that the provisions of this section shall in no case be construed to apply to advertisements or notices required or authorized by law to be published or to any advertisements placed by any public agency or body authorized by law to advertise in the furtherance of its functions and duties."
In Godwin v. East Baton Rouge Parish School Board, et al.,372 So.2d 1060 (La.App. 1st Cir. 1979); Writ Refused, the court examined Article XI, Section 4, and concluded:
 "We find no merit in the argument that the provision is not self-operative. We note particularly that the provision does not prohibit public officials from supporting or opposing candidates, parties or propositions with their personal funds and resources, which admittedly they have a right to do. It only prevents their doing so with public funds.
 Nor do we find substance in Appellees' contention that the constitutional article requires legislative implementation because it is vague and uncertain in that it is not clear what is prohibited by the clause `urge any elector to vote for or against any candidate or proposition,' or what is permitted expenditure for `the dissemination of factual information relative to a proposition appearing on an election ballot.' We find `urge' to be readily understood by an ordinarily informed and reasonable individual. According to Webster's Third New International Dictionary, Unabridged (1963), `urge' means . . . `to insist upon — to advocate or demand with importunity — to prosecute vigorously — solicit — be compelling . . . influence upon . . .'
 In our view, the authority to disseminate factual information relative to a proposition appearing on an election ballot encompasses all empirical data required by the public to intelligently decide whether to vote for or against the issue. Included in such information would of course be tax rates, if any, interest rates on bonds or other evidence of indebtedness purported to be issued and the term and provisions thereof, and an explanation of the expenditures contemplated. Such information may be disseminated in brochures or otherwise, provided they are purely factual and suggest no position for or against and make it clear that the data is published and disseminated solely and only for informational purposes."
Godwin, by its interpretation of Article XI, Section 4, concludes that, at least with regard to tax referendum elections (or contemplated, planned elections), the line between legality and illegality is that between advocacy of only one side of the public issue and the neutral statement of facts pertaining to all sides of an issue presented without bias.
The Attorney General has adopted the distinction between "public relations" and "public information" stated by the Louisiana Constitution, as interpreted and explained by Godwin, and applies it to the question of the proper expenditure of public funds for communications activity by government in government's ordinary, everyday course of business. Without specific, express authorization from the legislature by statute (i.e. drug education, economic development, etc.), the use of public funds to finance public relations techniques to manipulate public opinion on public issues to create a body of public opinion favorable to a public official or entity, is ultra vires. However, the use of public funds to provide a public information function to a governmental office is integral to its constitutional and/or statutory power and function, and is lawful if its intent is to be factually informative. See Attorney General Opinion No. 90-126A.
The expenditure of public funds to conduct surveys and/or public opinion polls is not unlawful per se. It is the purpose for which the public funds are spent, and the intent of the agency or official making the expenditure which controls its legal character.
Hence, if the opinion poll sought to be conducted falls within the ambit of a true public information function, public funds may be used for its development and distribution. This is consistent with Attorney General Opinion No. 89-418 which held that the Northeast Louisiana Juvenile Detention Center Authority could legally contract with a consultant to conduct a survey over a seven parish area which the authority serves.
Care should be taken that the poll conforms to the elements comprising the dissemination of pure factual information as discussed in Godwin, as well as the requirements set forth in LSA-R.S. 43:111.1.
We trust this information is helpful to you. Should you have any further questions, please do not hesitate to contact our office.
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH, III:lbw-0047R