Dear Ms. Lamb:
You have asked this office to determine whether an employee of the Registrar of Voters Office of East Baton Rouge Parish may also be members of the Baton Rouge League of Voters. For the following reasons, our response is "no".
Registrars of voters and their employees are considered state employees. City of New Orleans vs. State, 426 So.2d 1318 (La. 1983). All employees of the registrar of voters are by law prohibited from engaging in political activity. This prohibition is applicable to employees of the registrar in the unclassified state service and in the classified state service. The pertinent statute, R.S. 18:62, provides:
§ 62. Political activities prohibited
 A. No registrar of voters, deputy registrar, or other employee of a registrar who is in the unclassified state service shall participate or engage in: Political activity, including his own or any other candidacy for election to public office; membership on any national, state, or local committee of a political party or faction; asking or soliciting contributions for any political party, faction, or candidate; taking active part in the management of the affairs of a political party, faction, or candidate, or any political campaign, except to exercise his right as a citizen to express his opinion privately and to cast his vote as he desires. As used in this Section, the term "political activity" shall have the meaning ascribed to it in Article I, Section 9(C) of the Constitution of Louisiana.
 B. All deputy registrars and other employees of a registrar who are in the classified state service shall be subject to the constitution and laws, and the regulations adopted pursuant thereto, affecting political activities by persons in the classified state service.
While R.S. 18.62(A) addresses unclassified employees, R.S. 18:62(B) adopts constitutional authority with reference to political activity and classified state employees. Article X, § 9 of the Louisiana Constitution of 1974, specifically prohibits state civil service employees from engaging in political activities:
§ 9. Prohibitions against political activities
 Section 9. (A) Party Membership; Elections. No member of a civil service commission and no officer or employee in the classified service shall participate or engage in political activity; be a candidate for nomination or election to public office except to seek election as the classified state employee serving on the State Civil Service Commission; or be a member of any national, state, or local committee of a political party or faction; make or solicit contributions for any political party, faction, or candidate; or take active part in the management of the affairs of a political party, faction, candidate, or any political campaign, except to exercise his right as a citizen to express his opinion privately, to serve as a commissioner or official watcher at the polls, and to case his vote as he desires.
 (B) Contributions. No person shall solicit contributions for political purposes from any classified employee or official or use or attempt to use his position in the state or city service to punish or coerce the political action of a classified employee.
 (C) Political Activity Defined. As used in this Part, "political activity" means an effort to support or oppose the election of a candidate for political office or to support a particular political party in an election. The support of issues involving bonded indebtedness, tax referenda, or constitutional amendments shall not be prohibited.
The League of Women Voters is a quasi-political group that espouses positions or political issues. See Attorney General Opinion 02-0297. This office has previously determined that if "a member of the classified civil service belongs to an organization that endorses or contributes to a political candidate, said member would, in effect, be taking part in the political campaign for public office." See Attorney General Opinion 83-585. While the author of that opinion made his statement in reference to R.S. 33:2504 governing fire and police civil service employees, we nonetheless find it applicable herein. Thus, membership by the registrar of voters and his employees in the League of Women Voters constitutes political activity prohibited by state and constitutional authority.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
Date Released: April 23, 2003
OPINION NUMBER 02-297
August 28, 2002
15-A Constitutional Law 90-A-1 Public Funds La. Const. Art. 11, § 4
La. Const. Art. 7, § 14
R.S. 18:1465
While unpaid use of a public building for political purposes violates the La. Const., use of a public facility for public benefit and not purely private purpose is valid.
Thomas G. Wilkinson, Esq. Parish Attorney 1221 Elmwood Park Blvd. Suite 701 Jefferson, LA 70123
Dear Mr. Wilkinson:
This office is in receipt of your request for an opinion of the Attorney General in regard to use of public meeting rooms in the Parish libraries and various public buildings. The Jefferson Parish Council adopted a resolution in 1998 which prohibits any political activity in these facilities and reads as follows:
 Political activities are not allowed in any Jefferson Parish meeting facility. Political activities include:
 a. Any activities whose purpose is to support or oppose any political party.
 b. Any activities whose purpose is to support or oppose any candidate for public office.
 c. Any activities requiring an individual or group to file a campaign financial disclosure report under state or federal law, or
 d. Any activities requiring an individual or group to file a lobbying report under state or federal law.
 The provisions of this section, however, will not prohibit any non-profit group, as defined by the Internal Revenue Regulations, from using a Jefferson Parish meeting facility to hold public forums regarding the qualifications of political candidates or ballot referendums when such forums provide equal access to all candidates and issues that are subject of the forum; each non-profit group shall file an affidavit with the application for use of the facility verifying that they have complied with the equal access requirements of this section.
You indicate the Legislative Auditor admonished the Parish for being lax in enforcing this policy by allegedly allowing a partisan political organization to use the meeting room in contravention of La. Const. Art11, § 4, and R.S. 18:1465(A), and further criticized the Parish's practice of waiving fees for the use of these facilities by any group as being in contravention of La. Const. Art 7, § 14. Accordingly, you state the Parish has refused to waive fees for any group, civic, non-profit, and the like and has further refused to allow any quasi-political group, such as League of Women Voters and the John Birch Society from using Parish meeting facilities.
You relate as a result of these actions toward various groups that had heretofore been allowed to use these facilities, these groups have now complained in regard to the Parish allowing Congressman David Vitter's use of meeting rooms for "town hall" meetings. At the meetings governmental issues and other issues affecting the citizens of Jefferson Parish were discussed, but the Congressman did not engage in political activity or campaign activity.
You further note that Senator Ken Hollis has requested the use of a parish meeting room to convene a meeting of a Louisiana Senate committee which oversees the operations of the Lake Pontchartrain Causeway.
In light of these observations, you request an opinion on the following issues:
 1) Does the use of a parish facility by either a federal, state, or local governmental official to conduct a meeting with constituents to discuss governmental actions contravene the provisions of LSA Const. Art. 11 § 4 and LSA R.S. 18:1465(A) or any other provision of law?
 2) Since such meetings by a federal, state, or local governmental official are for the benefit of the citizens of Jefferson Parish, does the failure to impose or collect a fee from the official for the use of such facility contravene LSA Art. 7 § 14 or any other provision of law?
 3) If an organization does not support candidates but does espouse positions either for or against propositions and issues, e.g. the John Birch Society, the ACLU or the League of Women Voters, would the use of public facilities by such groups, even for a fee, contravene the provisions of La. Const. Art. 11 § 4 and LSA R.S. 18:1465(A) or any other provision of law?
 4) If such an organization desired to conduct either (i) a regular business meeting or (ii) a candidate forum with all candidates being invited but no endorsement being made, would the use of a public facilities by such groups, even for a fee, contravene the provisions of LSA Const. Art 11 § 4 and LSA R.S. 18:1465(A) or any other provision of law?
We note that R.S. 18:1465(A) provides as follows:
 A. No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or to be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot.
This office has repeatedly recognized that in accordance with La. Const. Art. 7, § 14 that things of value of the state or any political subdivision "shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private". Additionally, LA. Const. Art 11, § 4 provides that no public funds shall be used to urge any elector to vote for or against any candidate or proposition; and similarly R.S. 18:1465 provides that no public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization.
In Atty. Gen. Op. 91-216 in regard to the use of the Natchitoches Coliseum for a campaign testimonial dinner, this office concluded use of a public building for no fee would amount to the use of public funds and, therefore, would be in violation of R.S. 18:1465. However, it was observed, "If use of a public building is being paid for by private funds, then it would not be unlawful to use such building to urge any elector to vote for or against any candidate * * *."
Also, in Atty. Gen. Op. 94-227 this office related that R.S. 18:1465
was designed to prevent public officials from using public funds to support or oppose candidates, parties or propositions. It was concluded, "Therefore, it is the opinion of this office that the use of the St. Martinville City Hall building for political purposes (e.g., organizing and/or planning political campaigns, etc.) is contrary to public policy and constitutes a violation of Article 11, Section 3, and Article 7, Section 14 of the Louisiana Constitution."
Similarly, in accordance with the statutory and constitutional provisions, this office stated in Atty. Gen. Op. 77-790 that the Town of Bunkie was prohibited from making a gratuitous donation to the Bunkie Chamber of Commerce, and concluded by providing the organization free office space, the Town would be making such a donation. However, it was noted that earlier opinions had reasoned that public bodies may provide benefits to private organizations when such organizations render public services commensurate in value with the contribution conferred by the public body. It was then stated, "Accordingly, we conclude that office space may be provided for the Bunkie Chamber of Commerce if tangible service to the town are rendered, and if said services are deemed equivalent in value with the rental cost of the office space."
Pertinent to your inquiry, it is significant to note that wherein use of public funds are prohibited to urge votes for or against any candidate or proposition, consideration must be given to that portion of R.S. 18:1465
and La. Const. Art. 11, § 4 which provides, "This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot."
This office has recognized that public funds or property may be used for public purposes when in the public interest, but not for a purely private purpose or one which predominantly benefits a private group as distinguished from the public at large. In Atty. Gen. Op. 97-136 this office stated the statutes which provide civil and criminal penalties for use of public funds are punitive and must be strictly construed, but the exception which allows public bodies to disseminate factual information must be applied broadly. Thus, this office has recognized that public funds or property may be used for public purposes when in the public interest, but not for a purely private purpose or one which predominantly benefits a private group as distinguished from the public at large.
Therefore, in response to your first two questions we would conclude when the information disseminated by the public official is of a value to the community equivalent to the use of the public space without simply espousing a private interest of the organization there would be no prohibition in law to such use of the facility. The determination of this is a factual conclusion which this office would not be in a position to render.
In response to your third and fourth questions relative to whether use of a public facility by an organization that espouses a position on an issue or proposition would contravene the provisions of La. Const. Art11, § 4 and R.S. 18:1465(A), we would find no violation when there is a sufficient fee paid for the use of a public building inasmuch as there would be no use of public funds. As stated in Atty. Gen. Op. 91-216, "If the use of a public building is being paid for by private funds, then it would not be unlawful to use such building to urge any elector to vote for or against any candidate * * *." However, use of a public building for no fee would amount to the use of public funds, and therefore, would be in violation of R.S. 18:1465.
Of course, use of a public facility without payment of a fee may not occur where such use predominantly benefits the interests of a private group. Use of a public facility for a regular business meeting of an organization or a forum for members that espouse only limited views on particular issues would not be for the benefit of the public at large. However, a forum of all candidates open to the public to disseminate information would not be a violation of the Louisiana Constitution or statutes as long as not used solely to urge a vote for or against any candidate or proposition, but open for a discussion in the public interest rather than purely private purposes. As observed by this office in Atty. Gen. Op. 90-126A the information complied and communicated through the use of a public funds, herein a public facility, must be free from the presence of all advocacy and argument. It must be purely factual and suggest no position for or against an issue.
Therefore, organizations that espouse positions on political issues could use a public facility for a fee commensurate with the value of the use of such property, but without paying a reasonable fee, there would be a violation of the provisions of law that prohibit a donation or loan of public funds as set forth in La. Const. Art 11, § 4 and R.S. 18:1465(A) unless used as strictly provided in the resolution. As stated therein Apolitical activities are not allowed in any Jefferson Parish meeting facility, but the provision does not prohibit any non-profit group using a facility "to hold public forums * * * when such forums provide equalaccess to all candidates and issues that are subject of the forum * * *." (Emphasis added.) This exception for equal access obviously falls within the provision of law allowing use of a public building for dissemination of factual information, and thus, not for a purely private purpose. As stated in Atty. Gen. Op. 90-126A with reliance upon Godwinv. East Baton Rouge Parish School Board, 372 So.2d 1060 (La.App. 1st Cir. 1972), "the line between legality and illegality is that between advocacy of only one side of the public issue through use of public funds and the neutral statement of facts pertinent to all sides of an issue and presented without bias."
Therefore, an organization that espouses only one side of a public issue would be denied use of public funds, or in the instant case public facilities, unless there was payment of a reasonable fee, or there must be equal access to all views on an issue to insure the legality of the use of a public facility.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _____________________________ BARBARA B. RUTLEDGE Assistant Attorney General
RPI/bbr
Date Released: August 28, 2002
OPINION NO. 83-585
July 20, 1983
9 Civil Service Commission
71-1-1 Municipal Fire Police Civil Service
Participation in public meeting or convention by classified employee violates statute only if participation amounts to violation of specifically enumerated prohibitions contained in statute. Classified employee may not indirectly take part in campaign for public office by belonging to organization that endorses or contributes to candidate(s) for public office.
La.R.S. 33:2504
Officer John Erie Municipal Fire and Police Civil Service Post Office Box 3886 Shreveport, LA 71103
Dear Officer Erie:
In your opinion request dated July 5, 1983, you requested an opinion regarding La.R.S. 33:2504. Specifically, you asked the following questions:
 1) Is it a violation of La.R.S. 33:2504 for an individual to attend a political information committee convention, (such as that to be held in Baton Rouge on July 30) as a delegate or alternate delegate for a legally chartered police labor union?
 2) Is it a violation of La.R.S. 33:2504 for a legally chartered police labor union to make contributions to an individual who is seeking public office? And is the labor union allowed to make a public endorsement of such an individual?
The statute in question, La.R.S. 33:2504A, as follows:
 A. Political activities by and extending to employees of the classified service are hereby prohibited as follows:
 (1) No person shall seek or attempt to use any political endorsement in connection with any appointment to a position in the classified service.
 (2) No person shall use or promise to use, directly or indirectly, any official authority or influence, whether possessed or anticipated, to secure or attempt to secure for any person an appointment or advantage in appointment to a position in the classified service, or an increase in pay or other advantage in employment in any such position, for the purpose of influencing the vote or political action of any person, or for any consideration.
 (3) No employee in the classified service shall, directly or indirectly, pay, or promise to pay, any assessment, subscription, or contribution for any political organization or purpose, or solicit or take part in soliciting any such assessment, subscription, or contribution. No person shall solicit any such assessment, subscription, or contribution of any employee in classified service. The prohibitions of this Sub-section shall not be construed as applying to membership dues paid, or contributions made, to non-political employee organizations, pension funds, civic enterprises, the Louisiana Civil Service League or any similar non-political and non-partisan organization.
 (4) No employee in the classified service shall (a) be a member of any national, state, or local committee of a political party, (b) be an officer or member of a committee of any factional, political club or organization, (c) be a candidate for nomination or election to public office, (d) make any political speech or public political statement in behalf of any candidate seeking to be elected to public office, or (e) take any part in the management or affairs of any political party or in the political campaign of any candidate for public office, except to privately express his opinion and to cast his vote. (Emphasis Supplied}
 (5) No person elected to public office shall, while serving in the elective office, be appointed to or hold any position in the classified service.
 (6) No appointing authority, or agent or deputy thereof, shall directly or indirectly, demote, suspend, discharge, or otherwise discipline, or threaten to demote, suspend, discharge or otherwise discipline, or discriminate against any person in the classified service for the purpose of influencing his vote, support, or other political activity in any election or primary election. No appointing authority, or agent or deputy thereof, shall use his official authority or influence, by threats, promises or other means, directly or indirectly, to coerce the political action of any employee in the classified service.
Thus, in answer to your first question, the actions of the employee must amount to a violation of the specifically designated prohibitions mentioned above to be a violation of La.R.S. 33:2504. As Attorney General Opinion Number 74-189 states, it is not a violation of the law for members of the civil service to "participate" in a public meeting where candidates for public office have been invited to express political opinions unless the "participation" amounts to a violation of the specific prohibitions contained in La.R.S. 33:2504.
In response to your second inquiry, if a member of the classified civil services belongs to an organization that endorses or contributes to a political candidate, said member would, in effect, be taking a part in the political campaign of a candidate for public office. Such participation would be prohibited by R. S. 33:2504A(4)(e) even though the participation may be indirect rather than direct.
In conclusion, participation in a public meeting or convention by a classified civil service employee would violate La.R.S. 33:2504 only if the participation amounted to a violation of the specifically enumerated prohibitions contained in the statute. If a member of the classified civil service belongs to an organization that endorses or contributes to the candidacy of an individual running for public office then, in effect, the member would be taking part in a political campaign and thus be in violation of R.S. 33:2504A(4)(e).
If this office can be of further assistance, please do not hesitate to contact us.
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: _____________________ CYNTHIA D. YOUNG. Staff Attorney
CDY/crw